**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Cement-Lock LLC,** an Illinois limited liability company, and **Richard Mell**, an individual, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05 C 0018 |
| | ) | |
| **Gas Technology Institute,** an Illinois corporation, **Institute of Gas Technology,** an Illinois corporation, **Endesco Services, Inc.,** an Illinois corporation, **Endesco Clean Harbors, LLC,** a Delaware limited liability company, **Stanley S. Borys,** an individual, **James E. Dunne,** an individual, **Francis S. Lau,** an individual, and **Cement-Lock Group, LLC**, a Delaware limited liability company and nominal defendant, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca Pallmeyer Magistrate Judge Morton Denlow |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Jerald P. Esrick (No. 755397)
Elizabeth M. Keiley  (No. 6204675)
Robert L. Wagner (No. 6276109)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
Telephone:  (312) 201-2000
Facsimile:  (312) 201-2555

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

THE ALLEGATIONS .......................................................................................................... 2

STANDARD OF REVIEW ................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.    THE AMENDED COMPLAINT ALLEGES FACTS ESTABLISHING A RICO
          ENTERPRISE.................................................................................................... 4

        A.    Plaintiffs Properly Allege a RICO Enterprise................................................ 4

        B.    The RICO Enterprise's Multiple Purposes Are Distinct from the Predicate Acts
            Alleged ........................................................................................................ 9

        C.    Plaintiffs Allege a Structured RICO Enterprise.......................................... 12

        D.    Lau Participated in the Affairs of the Enterprise ........................................ 15

        E.    Defendants Challenge the RICO Conspiracy Count *Solely* on the Basis that It Must
            Fall if the Substantive RICO Count Falls ................................................... 17

    II.    THE AMENDED COMPLAINT ALLEGES FRAUD AGAINST LAU ....................... 18

        A.    Law Regarding Fraud and Negligent Misrepresentations ........................... 18

        B.    Lau's Fraudulent Misrepresentations and Omissions.................................. 19

        C.    Reasonable Reliance Cannot Be Decided on a Motion to Dismiss .............. 20

CONCLUSION.................................................................................................................. 22

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Repair, Inc. v. American Broadcasting Cos.*, 776 F.2d 143 (7th Cir. 1985) ...................... 3

*AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035 (7th Cir. 1990) ..................... 20

*Bachman v. Bears, Stearns & Co.*, 178 F.3d 930 (7th Cir. 1999) ........................................ 5, 7, 15

*Banco Del Atlantico, S.A. v. Stauder*, No. 03 CV 1342, 2005 WL 1925830 (S.D. Ind. Aug. 11, 2005) ................................................................................................ 10, 11

*Board of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580 (Ill. 1989) ....................... 18

*Butler v. Platte Valley Mortgage Corp.*, No. 94 C 3327, 1995 WL 875412 (N.D. Ill. Oct. 25, 1995) .................................................................................................................. 7

*City of Chicago Heights, Illinois v. LoBue*, 841 F. Supp. 819 (N.D. Ill. 1994) ........................... 17

*Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992) ............................................... 3, 20

*Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321 (7th Cir. 1998) ............................................ 7

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) ...................................................... 6

*Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990) ......................................................... 3

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998) .................................................. 15

*Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir. 1984) .......................................................................................................................... 5, 6, 7

*In Re EDC, Inc.*, 930 F.2d 1275 (7th Cir. 1991) ...................................................................... 20

*Jennings v. Emry*, 910 F.2d 1434 (7th Cir. 1990) ...................................................................... 9

*Majchrowski v. Norwest Mortgage, Inc.*, 6 F. Supp. 2d 946 (N.D. Ill. 1998) ........................... 6, 7

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967 (7th Cir. 1995) ............................................................................................................. 5, 13, 15, 18

*Okaya (U.S.A.), Inc. v. Denne Industries, Inc.*, No. 00 C 1203, 2000 WL 1727785 (N.D. Ill. Nov. 20, 2000) ............................................................................................. 9

*Quinn v. McGraw-Hill Cos.*, 168 F.3d 331 (7th Cir. 1999) ...................................................... 21

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ................................................................. 5, 13, 15

*Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640 (7th Cir. 1995).................................... 6, 7, 9, 13

*Schrager v. North Community Bank*, 767 N.E.2d 376 (Ill. App. Ct. 2002)............................ 19, 21

*Soules v. General Motors Corp.*, 402 N.E.2d 599 (Ill. 1980)........................................................ 18

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673 (7th Cir. 2000) ........................................ 9

*State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466
  (N.D. Ill. May 11, 2000) ...................................................................................................... 20

*Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366 (7th Cir.
  1988) ...................................................................................................................................... 20

*United States v. Turkette*, 452 U.S. 576 (1981) ............................................................................ 5

*Williams v. Ford Motor Co.*, 11 F. Supp. 2d 983 (N.D. Ill. 1998) ................................................ 7

**Statutes**

18 U.S.C. § 1961(4) ....................................................................................................................... 5

Plaintiffs, Cement-Lock LLC and Richard Mell (collectively "Plaintiffs"), submit this Memorandum of Law in response and opposition to Defendants' Motion to Dismiss Counts II and III Entirely and Counts II–VI Against Francis Lau (Docket #64).

## INTRODUCTION

Defendants and others created and controlled a complex, structured Enterprise of individuals and companies that usurped promising technologies, such as Cement-Lock, by misappropriating and laundering money intended to develop these technologies. The Enterprise maintained the illusion of legitimate research and development, but, in fact, actively suppressed any competitive efforts, both by members of the Enterprise or others, to develop these technologies. The Enterprise created sham corporations and used its members in distinct and specialized roles to achieve the common purposes of the Enterprise. The Enterprise conducted activities for more than eight years, misappropriated millions of dollars, suppressed or thwarted development of numerous technologies, and squandered legitimate business opportunities and technologies, all for its own gain. Plaintiffs bring suit to redress these wrongs.

Plaintiffs' Amended Complaint properly alleges claims of breach of fiduciary duty, fraud, trademark infringement, and RICO. This Court has already found that Plaintiffs' original complaint sufficiently stated nine causes of action against the Defendants. Plaintiffs' Amended Complaint now cures any deficiencies in the RICO counts identified by the Court in its Order of September 30, 2005 (Docket #50). Defendants, Gas Technology Institute ("GTI"), Institute of Gas Technology ("IGT"), Endesco Services, Inc. ("ESI"), Endesco Clean Harbors ("ECH"), Stanley Borys, James Dunne, Francis Lau, and nominal Defendant Cement-Lock Group, LLC (collectively "Defendants"), challenge Plaintiffs' amended RICO allegations, arguing that the corporate Defendants are not distinct from the individual members of the Enterprise, the alleged

Enterprise has no purpose aside from committing the predicate acts alleged, and there is insufficient structure to the Enterprise. Defendant Lau also challenges three of the claims directed at him—fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation.[1] Because Defendants' arguments are unsupported in law or fact, their Motion to Dismiss should be denied.[2]

## THE ALLEGATIONS

Because the Court is presumably familiar with the factual background underlying Plaintiffs' claims, Plaintiffs focus solely on the new or amended allegations in the Amended Complaint.[3]

In response to the Court's questions and concerns expressed in its Order of September 30, 2005 and additional information Plaintiffs have learned since filing the original complaint, Plaintiffs expanded the Amended Complaint to more completely describe:

- the various individuals and companies in and associated with the Enterprise, including the employees of IGT and GTI, the subcontractors and consultants, and the granting agencies (Am. Compl., ¶¶ 18–53);

- the Enterprise members' roles in the Enterprise (*Id.* ¶¶ 115–25);

- the Enterprise's multiple and distinct purposes (*Id.* ¶¶ 114–16);

- how the Enterprise used its subcontractor and consultant members to launder money (*Id.* ¶¶ 147–50); and

---

[1] Lau does not challenge the other three claims directed at him—Counts I, VII, and VIII (breach of fiduciary duty, unjust enrichment, and accounting).

[2] Defendants also incorrectly suggest that the Amended Complaint is the "third bite at the apple." (Defs.' Memo., p. 2.) As this Court well knows, Plaintiffs' original complaint was dismissed only as a result of Defendants' calculated machinations to avoid responsibility for their actions. Defendants deliberately manipulated and took control of Cement Lock Group's operating board for the sole expressed purpose of dismissing the original complaint brought against them. However, this Court has already approved nine of the eleven claims against Defendants and gave Plaintiffs the opportunity to remedy certain deficiencies in the RICO claims. Far from being a third bite at the apple, Plaintiffs have three times stated valid and serious claims against Defendants.

[3] To better illustrate the differences between the original and amended complaints, Plaintiffs submit as Exhibit A a redlined copy of the Amended Complaint identifying the changes made to conform with the Court's Order of September 30, 2005. A more detailed summary of the allegations can be found in Plaintiffs' opposition to Defendants' original motion to dismiss, as well as the Court's Order. (Docket #28, pp. 1–6; Docket #50, pp. 3–18.)

- Snell Environmental Group and its relationship to both the Michigan Department of Environmental Quality and the Enterprise (*Id.* ¶¶ 51, 53, 170, 185, 197, 201).

In addition to describing each member of the Enterprise in more detail, the Amended Complaint provides more detail about the wrongful actions of

- Peter Barone  (*Id.* ¶¶ 170, 181–82, 186–87, 195, 211–12);
- Stanley Borys  (*Id.* ¶¶ 70, 77, 90, 107–08, 154, 170, 209, 211–12, 222, 227);
- James Dunne (*Id.* ¶¶ 70, 154, 163, 211);
- Anil Goyal (*Id.* ¶ 209);
- Francis Lau (*Id.* ¶ 70);
- Anthony Lee (*Id.* ¶¶ 77, 90, 104, 108, 153–54, 170, 181–83, 187, 211–12);
- Michael Mensinger (*Id.* ¶ 72);
- Amirali Rehmat.  (*Id.* ¶¶ 72–73, 103, 142, 193, 212);
- ANE Research Corporation (*Id.* ¶¶ 115, 182, 187);
- Barone Consulting Group, Inc. (*Id.* ¶¶ 115, 181–82, 186–87);
- Energy and Environmental Monitors (*Id.* ¶¶ 115, 182, 187);
- Homatex, Inc. (*Id.* ¶¶ 115, 181);
- Molecular Thermoengines, Inc. (*Id.* ¶¶ 115, 181–82, 186–87);
- Reaction Kinetics Consultants, Inc. (*Id.* ¶¶ 115, 181–82); and
- Wayne & Associates (*Id.* ¶¶ 115, 181).

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the pleadings. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  It is not a decision on the merits of the case.  *Id.*  As such, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from these facts in the light most favorable to plaintiff.  *Id.* at 1520–21. Moreover, the Court does not weigh the evidence or engage in speculation about whether plaintiff will ultimately prevail.  *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 78–79 (7th Cir. 1992); *Action Repair, Inc. v. American Broadcasting Cos.*, 776 F.2d 143, 149 (7th Cir. 1985) (reversing district court's dismissal for making "judgment calls" about merits of complaint).  A motion to dismiss should be granted only when it appears beyond a doubt that plaintiff can prove no set of facts that would entitle it to relief.  *Early*, 959 F.2d at 78–79.

3

## ARGUMENT

### I. THE AMENDED COMPLAINT ALLEGES FACTS ESTABLISHING A RICO ENTERPRISE.

Defendants begin their Memorandum in Support of Their Motion to Dismiss (Docket #65), with an objection to the composition of the RICO Enterprise, claiming that some of the corporate members should not be part of the Enterprise because they are not distinct from their employees. Defendants then urge dismissal of the RICO claims (Counts II and III—violations of 18 U.S.C. §§ 1962(c) & (d)) on the grounds that (a) the only purpose of their redefined Enterprise is to commit the predicate acts alleged—diversion of Cement-Lock Group's money; and (b) the redefined Enterprise has no ascertainable structure because some, but not all, of its members' roles have not been described. Defendant Lau also argues that Plaintiffs have not alleged that he participated in the operation or management of the Enterprise. Defendants' arguments require the Court to ignore both the law and the specific allegations contained in the Amended Complaint. Accordingly, their Motion should be denied.

### A. Plaintiffs Properly Allege a RICO Enterprise.

Defendants concede that thirteen of the members—Barone, Borys, Dunne, Goyal, Lau, Lee, Mensinger,[4] Rehmat, ANE Research Corp., Energy and Environmental Monitors, Molecular Thermoengines, Inc., and Wayne & Associates—are properly included as part of the association-in-fact enterprise. (Defs.' Memo., p. 7.) They dispute only the inclusion of corporate entities GTI, IGT, ECH, ESI, Barone Consulting Group, Inc., and Reaction Kinetics Consultants, Inc. ("RKC").[5] Defendants ignore, however, the allegations in the Amended Complaint of IGT's

---

[4] In their Memorandum (p. 7), Defendants appear to have inadvertently left off Mr. Mensinger from their list of those individuals whom they believe are properly part of the alleged Enterprise.

[5] Defendants state that GTI, IGT, ESI, and ECH should be excluded from the Enterprise because "an employer and its employees are not distinct" (Defs.' Memo., p. 7), yet the precise relationship of the entities remains uncertain based on Defendants' pleadings. In their Answer to the original Complaint, Defendants deny that GTI was formed as a combination of IGT and GRI and deny that IGT and GRI continue to exist as separate and distinct corporate

and GTI's direct involvement in the Enterprise, that IGT created ESI and ECH for the express purpose of furthering the Enterprise, and that Barone and Lee created Barone Consulting and RKC in order to further and conceal the Enterprise's fraudulent activities. (Am. Compl., ¶¶ 98–99, 106, 121–23.) They also ignore the allegations that each corporate member of the Enterprise actively performed discrete activities with discrete benefits to each of them separate from the actions of and benefits received by the individual members of the Enterprise. (*Id.* ¶¶ 4, 110, 138, 170, 181–82, 186–87, 240.) Under these circumstances, all of the corporate entities are properly included in the Enterprise.[6]

An "association-in-fact" enterprise is a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Each person (or RICO person) can be held liable for his participation in conducting the affairs of the enterprise through a pattern of racketeering activity. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 401 (7th Cir. 1984).

In construing § 1962(c), the Seventh Circuit has determined that an enterprise must be distinct from the individuals or entities that comprise the enterprise. *Id.* at 400. In most instances, this requirement poses no problem. For example, an association-in-fact enterprise

---

entities. (Answer, ¶¶ 22, 138.) Yet, in their Complaint in Case No. 05 C 2712, they claim GTI was formed as a combination of IGT and GRI. (Compl., Case No. 05 C 2712, ¶ 7.) The uncertainty in the precise relationship between these entities is another reason to reject Defendants' suggestion to reform the Enterprise.

[6] Even if the Court concludes that Defendants are correct that certain Defendants are not part of the Enterprise, dismissal of all Defendants from Count II would be improper. *See, e.g., Bachman v. Bears, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) (considering whether subset of alleged enterprise satisfied RICO requirements, rather than simply dismissing RICO claims outright). Similarly, none of the Defendants would need to be dismissed from either Count II or III, as non-enterprise members can be liable under either count if they participated in the operation or management of the enterprise or conspired with the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184–85 (1993); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 979 (7th Cir. 1995) ("[L]iability under section 1962(d) is therefore 'not coterminous with liability under [section] 1962(c).' A defendant may conspire to violate section 1962(c) even if that defendant could not be characterized as an operator or manager of a RICO enterprise under *Reves*." (citation omitted)). Indeed, Defendants do not take issue with any of these points in their Memorandum.

comprised solely of a number of individuals is distinct from these individuals—the entity (the enterprise) is different from the people making up the entity. But, when the enterprise is comprised of a corporation and its employees, courts have been more cautious in finding distinctness, reasoning that in many instances the corporation is nothing more than a collection of its employees. *See, e.g., Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 647 (7th Cir 1995); *Haroco*, 747 F.2d at 401.

Distilling these concerns, the Seventh Circuit has required that a RICO person commit a crime or fraud while participating in the *enterprise's* affairs, not simply *his or her own* affairs or business. *Richmond*, 52 F.3d at 646–47. Thus, when an enterprise is comprised solely of a corporation and its employees, and the wrongful conduct amounts to nothing more than the ordinary business of the corporation as implemented by its employees, the employees are participating in the corporation's affairs and not the enterprise's affairs. *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997). To properly include a corporation and its employees as part of an enterprise, therefore, a plaintiff must show that the corporation and its employees were participating in affairs separate and distinct from the corporation's ordinary business.

Stated differently, if a corporation is merely a passive entity in the fraudulent scheme, playing no active role in the fraud and lending no "air of legitimacy" to hide the fraud, its addition to the Enterprise adds nothing. *Id.* at 227–28; *Majchrowski v. Norwest Mortgage, Inc.*, 6 F. Supp. 2d 946, 955 (N.D. Ill. 1998) (Castillo, J.) (citing *Fitzgerald*, 116 F.3d at 228–29). On the other hand, if the corporation plays an active role in the fraud, inclusion in the Enterprise is proper. *Majchrowski*, 6 F. Supp. 2d at 955–56. Notably, these same concerns about distinctness do not arise when corporations and their subsidiaries are alleged members of the enterprise. The Seventh Circuit, in *Haroco*, concluded that they are presumptively distinct entities under RICO.

747 F.2d at 402–03. *See also Williams v. Ford Motor Co.*, 11 F. Supp. 2d 983, 986–87 (N.D. Ill. 1998) (Moran, J.); *Majchrowski*, 6 F. Supp. 2d at 956 ("Under *Haroco* (and as confirmed by *Richmond*), a subsidiary is presumptively (and perhaps conclusively) distinct from its parent.").

*Butler v. Platte Valley Mortgage Corp.*, No. 94 C 3327, 1995 WL 875412, *2–4 (N.D. Ill. Oct. 25, 1995) (Zagel, J.), is instructive on these points. In that case, the Court found that plaintiffs properly stated an association-in-fact enterprise comprised of a parent corporation and its subsidiaries. The parent company played a direct and central role in the enterprise by delegating and coordinating mortgage servicing responsibilities to its various subsidiaries, who were also part of the enterprise. The detailed allegations of its role at the top of the enterprise avoided the concerns expressed in *Richmond* that the allegations were so vague as to make it unclear as whether any of the defendants actually participated in the affairs of the enterprise. *Id.* at *3–4 (citing *Richmond*, 52 F.3d at 645–47).

*Bachman* does not require a different result. In *Bachman*, the Seventh Circuit dismissed four corporations from the alleged RICO enterprise, finding that they were not distinct from the two employees who were part of the putative enterprise. 178 F.3d at 932 (citing *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1324–25 (7th Cir. 1998) and *Fitzgerald*, 116 F.3d at 226). The four corporations did not take any direct actions in support of the alleged RICO enterprise; rather, they were simply the employers of the individual defendants. In that situation, the Seventh Circuit correctly concluded that they were not distinct from their employees.

Here, the Enterprise properly includes all of the individuals and corporate entities, because the Amended Complaint details the roles and activities of each. The corporate entities are not included as passive players.

For example, the Amended Complaint alleges that IGT and GTI were the key members

of the Enterprise. These companies were not simply the employers of other members of the Enterprise,[7] but took active steps to further the Enterprise, creating Cement-Lock Group (Am. Compl., ¶¶ 72–99), applying for and receiving grant funds for legitimate and illegitimate purposes, and spending the money for purposes other than those stated in the funding grants. (*Id.* ¶¶ 161, 170–71, 185, 198). ESI and ECH likewise played active roles in the Enterprise. As subsidiaries of GTI and IGT, they are presumptively distinct and act for purposes separate from those of their parents. The Amended Complaint alleges that ESI controlled Cement-Lock Group (*Id.* ¶¶ 88, 93, 98–99, 123), while ECH served as a vehicle for receiving and spending grant funds (*Id.* ¶¶ 106, 108, 110, 122). The Amended Complaint further alleges that IGT specifically created these subsidiaries to further the Enterprise, both by lending an air of legitimacy to it and by masking Defendants' wrongful actions. Barone's and Lee's companies, Barone Consulting and RKC respectively, were sham corporations used to launder money for the Enterprise. (*Id.* ¶¶ 115, 121, 135, 148.) They too lent an air of legitimacy to the Enterprise by purporting to conduct research activities on the Technology and helping to mask Defendants' wrongful actions. The activities of the remaining individual and corporate members are similarly detailed in the Amended Complaint, and Defendants do not dispute their inclusion in the Enterprise.

In sum, the Amended Complaint sufficiently alleges the distinct role and active participation of each corporate and individual member of the Enterprise. None of them were passive entities. Thus, inclusion of all members is appropriate, and Defendants' Motion to Dismiss should be denied.

---

[7] Barone, for instance, worked at GRI when Defendants first formed the Enterprise and committed acts in furtherance of the Enterprise prior to GRI's merger with IGT in April 2003. (Am. Compl. ¶¶ 169–70, 179.) In addition, none of the various subcontractors and consultants are in IGT's or GTI's corporate structure or otherwise affiliated with them. (*Id.* ¶¶ 42–48.)

**B.     The RICO Enterprise's Multiple Purposes Are Distinct from the Predicate Acts Alleged.**

Defendants incorrectly suggest that the Enterprise's only alleged purpose is to commit the predicate acts alleged—diversion of Cement-Lock Group's money to its members.  Even a cursory review of the Amended Complaint, reveals that the Enterprise has at least four purposes separate and distinct from the predicate acts of mail/wire fraud and money laundering.[8]

Under RICO, an enterprise is "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making."  *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)).  The members of the enterprise must have a common purpose of engaging in a course of conduct, rather than simply acting for their own benefit.  *Richmond*, 52 F.3d at 645.  A group of individuals committing a pattern of racketeering activity (the predicate acts), without more, does not make an enterprise.  *Stachon*, 229 F.3d at 675; *Okaya (U.S.A.), Inc. v. Denne Industries, Inc.*, No. 00 C 1203, 2000 WL 1727785, *3–4 (N.D. Ill. Nov. 20, 2000) (Castillo, J.).  Rather, the organization/enterprise itself must have goals separate from merely committing the predicate acts alleged.  *Id.*

Plaintiffs' Amended Complaint more than adequately alleges these separate goals of the Enterprise, providing specific allegations that that Defendants formed an Enterprise to (1) enrich its members, (2) suppress development of the Technology by themselves or anyone else, (3) pursue work on other legitimate projects, and (4) defraud other victims using similar schemes. (Am. Compl., ¶¶ 114, 116.)  Any one of these purposes defeats Defendants' Motion.

Defendants concede that Plaintiffs have adequately alleged that one of the purposes of the

---

[8] These purposes are neither "glib" nor "newly-minted," as Defendants suggest (Defs.' Memo., p. 9), but were described in detail in the original Complaint or are found in Defendants' parallel Complaint in Case No. 05 C 2712.

Enterprise was to enrich its members (Defs.' Memo., p. 8), but Defendants incorrectly limit the alleged purpose to the outright theft of funds through kickbacks and fraud. The alleged enrichment goes far beyond this direct diversion of funds. Plaintiffs allege that the Enterprise further enriched its members by providing a seemingly legitimate business that paid some members' salaries, bonuses, and benefits, despite doing little or no actual work on the Cement-Lock project. (*Id.* ¶¶ 127–29.) In other words, the Enterprise cloaked its members with an air of legitimacy by offering them employment, titles, salaries, and other benefits of full-time employment separate and apart from providing the members with a vehicle for direct enrichment in the form of kickbacks.

In addition, the Enterprise actively suppressed development of the Cement-Lock Technology, not only by failing to apply the money granted to develop the Technology but also by interfering with third parties' (such as Unitel Technologies') opportunities to develop the Technology. (Am. Compl., ¶¶ 5, 114, 116, 129, 219–29.) This purpose ensured that the Enterprise did not need to compete with others for grant funds and guaranteed the survival of the Enterprise. As long as no competition or actual development of the Technology existed, the Enterprise could continue to exist in perpetuity.

Citing *Banco Del Atlantico, S.A. v. Stauder*, No. 03 CV 1342, 2005 WL 1925830, *8 (S.D. Ind. Aug. 11, 2005), Defendants argue that the suppression of the Technology is not a purpose separate from Defendants' attempts to profit from their scheme. In *Banco*, defendants induced plaintiffs' bank to loan money by providing false financial statements and making fraudulent guarantees. Defendants challenged plaintiffs' RICO claims, arguing that plaintiffs only alleged that defendants had a single purpose—to defraud plaintiffs by inducing them to make loans and preventing them from recovering their money—which they claimed was not

separate from the predicate acts alleged.  Plaintiffs argued that defendants had other purposes, chiefly to profit from their fraud.  The court rejected this additional purpose on two grounds: (1) it was not alleged in the complaint, and (2) it was merely a re-characterization of the original purpose of defrauding plaintiffs.  *Id.*

Unlike the situation in *Banco*, suppression of the Technology is not the same as the diversion of grant money or enrichment of the Enterprise's members.  Instead, the Amended Complaint details active steps taken by Defendants to prevent independent development of the Technology—steps that did not result in the diversion of money or direct enrichment of the Enterprise.  For example, the Amended Complaint alleges that Defendants interfered with and prevented Unitel Technologies' independent efforts to develop the Technology in Taiwan.  (Am. Compl., ¶¶ 219–29.)  This purpose is sufficiently independent from the predicate acts alleged to meet the requirements of RICO.

Furthermore, the Enterprise conducted other research related to the gas industry and funded projects promoting other technologies.  (*Id.* ¶ 116.)  Although Defendants claim that there are no factual averments supporting these allegations (Defs.' Memo., p. 11), these allegations appear throughout the Amended Complaint.  (*Id.* ¶¶ 138, 152, 160–62, 182, 186–87, 189.) Plaintiffs have amply described how money meant for Cement-Lock Group was used to fund other projects and cover salaries and expenses for work done on other projects.  Defendants' characterization of Plaintiffs' allegations as "absurd" does not justify dismissal.  (Defs.' Memo., p. 11.)  Far from absurd, Defendants' pursuit of other projects, some of which may have been legitimate, was entirely consistent with the Enterprise's other goals.  Defendants could only continue to secure additional grants if outside funding agencies believed that GTI, IGT, and ECH were conducting real work in the gas industry.  By using some funds for seemingly legitimate

projects, the Enterprise could continue to use the bulk of the money for their illegitimate purposes. That some members of the Enterprise existed solely as sham companies is not inconsistent with other members of the Enterprise doing legitimate work on other projects. Indeed, Defendants make this same allegation in their verified complaint in related Case No. 05 C 2712 before this Court—claiming that the alleged RICO enterprise in that case (consisting of Barone, Lee, and Rehmat) conducted legitimate work as one of its purposes. (Compl., Case No. 05 C 2712, ¶¶ 169, 171.)

Finally, Defendants entirely ignore the Enterprise's other purpose cited in the Amended Complaint—to engage in other, similar fraudulent schemes involving different technologies, such as ACIMET, the New Acid Removal System, Thermogenics Technology/Autofluff, M-C Power, Mosaic, and TDP Technology, and different victims. (Am. Compl., ¶ 116.) Defendants' complaint in Case No. 05 C 2712 outlines some of the same schemes, which involve many of the same members of the Enterprise alleged here and which are distinct from the predicate acts alleged in the Amended Complaint.

Plaintiffs allege that the Enterprise has at least four separate and distinct purposes that differ from merely committing the predicate acts alleged in the Amended Complaint (various instances of mail and wire fraud and money laundering). Defendants were not simply acting in their own interests; rather, as alleged in the Amended Complaint, they came together with common purposes to further the Enterprise. Defendants' argument to the contrary is misplaced, and their Motion to Dismiss should be denied.

### C.    Plaintiffs Allege a Structured RICO Enterprise.

Defendants admit that the Amended Complaint describes the roles of the eight key individuals involved in the Enterprise: Barone, Borys, Dunne, Goyal, Lee, Lau, Mensinger, and

Rehmat. (Defs.' Memo., p. 14.) Nonetheless, Defendants argue that the RICO claims must be dismissed because the Amended Complaint does not adequately describe the roles of the subcontractors and consultants who occupied the lowest tier of the Enterprise. (*Id.* at 14–15.) Defendants are wrong, both factually and legally.

While "[t]he hallmark of an enterprise is a 'structure,' . . . there need not be much structure" to meet this requirement. *Richmond*, 52 F.3d at 645 (citations omitted). As long as there is continuity, some differentiation of its members' roles, and a common purpose of engaging in a course of conduct, the Enterprise has sufficient structure. *Id.* Defendants challenge the differentiation element with respect to the subcontractors and consultants only, arguing that they played no role in the Enterprise other than their involvement with certain fraudulent transactions.[9]

That the subcontractors and consultants had a more limited role in the Enterprise does not matter in this analysis. Liability under § 1962(c) extends to those who "participated in the operation or management of the enterprise itself." *MCM Partners*, 62 F.3d at 977 (quoting *Reves*, 507 U.S. at 185). Liability is not limited to the upper-level managers—participants under the direction of upper management may be liable as well. *Id.*

The Amended Complaint sets forth an enterprise with a pyramidal structure. (Am. Compl., ¶¶ 117–24.) Borys and Dunne are at the top of the Enterprise, directing and controlling the actions of the others.[10] (*Id.* ¶ 118.) Below them are Barone, Lau, and Lee, who managed the administrative details, falsely granted internal approvals, fraudulently granted licenses, and managed Cement-Lock Group to hide the Enterprise and its activities from its minority

---

[9] Defendants make no challenge to the propriety of the allegations regarding how GTI, IGT, ESI, or ECH fit within the structure of the Enterprise.

[10] For example, Borys's and Dunne's leadership positions in the Enterprise are detailed in paragraphs 6, 26–27, 113, 126, 141, 155, 160, 163, 167, 169–70, 184, and 213.

members.[11]  (*Id.* ¶ 119.)  Goyal, Mensinger, and Rehmat did whatever work was necessary to

obtain the grants and maintain the illusion of active development of the Technology.[12]  (*Id.*

¶ 120.)  IGT and GTI controlled ESI, which in turn controlled Cement-Lock Group, organized

ECH as a separate for-profit entity to receive grant proceeds, applied for and received grants, and

distributed money throughout the Enterprise.  (*Id.* ¶¶ 161, 170–71, 185, 198.)  ESI, as the

majority member, was used to seize control of Cement-Lock Group and to hide the Enterprise

from Plaintiffs.  (*Id.* ¶ 123.)  ECH was created to apply for and receive grants and to hide money

from Plaintiffs.  (*Id.* ¶ 122.)  Finally, the subcontractors and consultants acted as seemingly

legitimate companies to perform tasks supposedly devoted to the development of the

Technology, but, in reality, laundered money from GTI, IGT, and ECH back to the members of

the Enterprise.[13]  (*Id.* ¶ 121.)  Paragraph 121 of the Amended Complaint specifically alleges:

> The various subcontractors and consultants, who were supervised
> either by members of the Enterprise or relatives of members of the
> Enterprise, established and controlled sham companies to act as
> seemingly legitimate entities to receive some of the grant money
> from GTI, IGT, and Endesco Clean Harbors and rebate or kick it
> back to other members of the Enterprise while keeping some of the
> funds for themselves.  Their presence and actions helped hide the
> existence of the Enterprise by making it appear that grant money
> was being spent in legitimate ways.  These various subcontractors
> and consultants acted with full knowledge that their actions aided
> the Enterprise and unlawfully enriched its members.

The Amended Complaint further details the specific actions taken by the subcontractors

and consultants in support of the Enterprise.  (*Id.* ¶¶ 135–37, 148–49, 181–82, 186–87.)  These

paragraphs explain the false billing practices and kickbacks used by the subcontractors and

---

[11] Similarly, Barone's, Lau's, and Lee's managerial responsibilities for the Enterprise are detailed in paragraphs 28, 31, 33, 126, 141, 153–54, 159–60, 164, 169–70, 175, 184, 196, 199–200, and 224.

[12] Goyal's, Mensinger's, and Rehmat's operational responsibilities for the Enterprise are detailed, for example, in paragraphs 32, 34, 36, 126, 141–42, and 169.

[13] To the extent Defendants may argue that Paragraph 121 does not identify the subcontractors and consultants, their argument would be misplaced.  Paragraphs 42–48 and 115 clearly set forth their identities.

consultants to launder money. In fact, the Amended Complaint identifies four specific instances in which the subcontractors and consultants laundered money for the Enterprise. (*Id.* ¶¶ 181–82, 186–87.) The Amended Complaint does not "merely associate" each of these entities with fraudulent transactions (Defs.' Memo., p. 14), but explains with specificity their role in furthering and supporting the Enterprise.[14] The Amended Complaint describes the subcontractors' and consultants' participation and roles in the operation of the Enterprise with sufficient detail to satisfy the pleading requirements for liability under § 1962(c).[15]

### D. Lau Participated in the Operation and Management of the Enterprise.

Defendants argue that Lau cannot be a member of the Enterprise due to his allegedly limited role in the operation and management of the Enterprise. Defendants' argument, like the others, relies on a misreading of the Amended Complaint and ignores the detailed allegations of Lau's active and supervisory role in the Enterprise.

As Defendants recognize, a defendant may be held liable under § 1962(c) if he "participated in the operation or management of the enterprise itself." *MCM Partners*, 62 F.3d at 977 (quoting *Reves*, 507 U.S. at 185). Simply performing services for an enterprise, even with knowledge of its illicit nature, is not sufficient for liability, though. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998). The key for liability is showing some degree of participation in the direction and operation of the enterprise.

The Amended Complaint satisfies this requirement by detailing Lau's role in operating and managing the Enterprise. As President of both Cement-Lock Group and ECH, he held

---

[14] Defendants' protestations further ring hollow considering that they allege in their Complaint in 05 C 2712 that these very same subcontractors and consultants were part of a RICO conspiracy involving the Cement-Lock project.

[15] Even if the subcontractors' and consultants' roles were not described sufficiently, the remedy would simply be to reform the Enterprise without them, not to dismiss the RICO counts in their entirety. *See, e.g. Bachman*, 178 F.3d at 932 (reforming enterprise before considering whether RICO enterprise was properly alleged). It would be a novel defense for a crime boss accused of racketeering to have a RICO complaint dismissed simply because one of the lowest-level member's role in the RICO enterprise was not described with particularity.

managerial and controlling positions in the Enterprise. (Am. Compl., ¶ 199.) In addition, he took specific actions in furtherance of the Enterprise, signing licenses (*Id.* ¶ 200), hiding its existence by failing to disclose the true scope of the fraud to the other managers of Cement-Lock Group at meetings of the managers and otherwise (*Id.* ¶¶ 213, 215), and helping to actively suppress development of the Technology by preventing Unitel Technologies from developing a commercial facility in Taiwan (*Id.* ¶ 224). Lau was not simply a small player in a large enterprise who sat on the sidelines or unknowingly assisted the Enterprise. The Amended Complaint alleges that he occupied high-level supervisory positions within the Enterprise and knowingly took steps to further its goals. (*Id.* ¶¶ 7, 28, 119–20, 143.)

Defendants' argument that Lau could not have participated in the affairs of the Enterprise hinges on the timing of his appointment relative to the first revelation of fraud to Surjit Randhava. Defendants claim that Surjit Randhava (and they assume, without any facts in support, Plaintiffs) knew of the fraud committed against Cement-Lock Group on January 15, 2003, when Borys and Albert Sherman met with Surjit Randhava to inform him that Barone and Lee had been fired. (*Id.* ¶ 211.) Defendants conclude that, because Lau was not named President of Cement-Lock Group until March 16, 2003, Lau could not have participated in the affairs of the Enterprise.

Defendants' argument has two fatal flaws, however. First, their timing is wrong. Lau was appointed a manager and president of Cement-Lock Group at the January 30, 2003 operating board meeting, not March 16, 2003.[16] (*Id.* ¶ 199.)

Second, Defendants actively concealed the true scope of the fraud regarding Cement-

---

[16] The March 16, 2003 date refers to a subsequent written consent by the managers of Cement-Lock Group (including Lau) that ratified the decisions in the January 30, 2003 operating board meeting to remove Lee and appoint Lau and others as officers of Cement-Lock Group.

Lock Group. (*Id.* ¶¶ 211–15.) While Defendants continually try to limit the fraud to Barone, Lee, and Rehmat, that is not what Plaintiffs have alleged in the Amended Complaint. The fact that most of the grants from which money was stolen were made before Lau was elected President of Cement-Lock Group is not significant. What is significant is that Plaintiffs allege Lau was a principal player in seeking to hide from Plaintiffs the true scope of the fraud, including the involvement of other members of the Enterprise such as Borys, Dunne, IGT, GTI, ESI, and ECH. Defendants' argument of what Plaintiffs knew or should have known is improper on a motion to dismiss. *See City of Chicago Heights, Illinois v. LoBue*, 841 F. Supp. 819, 823–24 (N.D. Ill. 1994) (Alesia, J.) (stating that, on a motion to dismiss, a court accepts all well-pleaded facts and allegations as true, including when a plaintiff discovered its injury). Plaintiffs allege that not until they became aware of the FBI investigations *and* Defendants blocked Unitel Technologies' Taiwan development of the Technology in the Fall of 2003 did they begin making inquiries into Defendants' mismanagement of Cement-Lock Group. (Am. Compl., ¶¶ 230–31.) This was well after Lau took over as President of Cement-Lock Group and well after he took actions in furtherance of the Enterprise.[17] Any analysis, therefore, of the weight or merit of these allegations is inappropriate in considering a motion to dismiss.

## E. Defendants Challenge the RICO Conspiracy Count *Solely* on the Basis that It Must Fall if the Substantive RICO Count Falls.

Defendants' sole challenge to the § 1962(d) RICO conspiracy claim (Count III) is that it should be dismissed for the same reasons that they believe the § 1962(c) substantive RICO claim (Count II) should be dismissed. (Defs.' Memo., p. 2, n.1.) Defendants make no other challenge

---

[17] Moreover, it is not "absurd" (Defs.' Memo., p. 18) to suggest that Lau was involved in the fraud when Defendants placed him in control of Cement-Lock Group. Faced with the unraveling of their illicit schemes and impending investigations, it is entirely consistent for Borys and Dunne to appoint someone involved in the fraud to be President of Cement-Lock Group. In this way, Lau could help obscure Defendants' wrongdoings, whereas an outsider may have been more aggressive in rooting out all of the actors in the fraud.

to the sufficiency of the Count III.  Because Count II should survive Defendants' motion in whole or in part for the reasons expressed above, Count III likewise should survive in its entirety as to all Defendants.  *MCM Partners*, 62 F.3d at 979 (holding that liability under § 1962(c) is not coterminous with liability under § 1962(d)).

## II.    THE AMENDED COMPLAINT ALLEGES FRAUD AGAINST LAU.

Defendants argue that Counts IV through VI (fraudulent concealment, fraudulent misrepresentation, and negligent misrepresentation) should be dismissed against Lau for failure to plead reasonable reliance on his statements or omissions.  Again, Defendants are incorrect. The Amended Complaint sets forth both Lau's misrepresentations and omissions and Plaintiffs' reasonable and justifiable reliance on them to their detriment.  To grant their Motion to Dismiss, Defendants would have this Court improperly engage in assessments of the reasonableness of Plaintiffs' reliance, without benefit of development of the factual record.  Defendants' Motion to Dismiss is premature and should be denied.

### A.    Law Regarding Fraud and Negligent Misrepresentations.

To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) knowledge or belief of its falsity by the person making it; (3) intention to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statements; and (5) damage resulting from such reliance.  *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980).  For a negligent misrepresentation claim, a defendant only need be careless or negligent in his knowledge of the statement's falsity.  In addition, though, the defendant must have a duty to convey truthful information to plaintiff. *Board of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989).

With respect to a claim for fraudulent omission, a plaintiff must allege: (1) concealment

of a material fact; (2) where there is a duty to convey truthful information; (3) intention to induce

a false belief in the other party; (4) the other party could not have discovered the truth through a

reasonable inquiry, or was prevented from making a reasonable inquiry, and justifiably relied

upon the silence as a representation that the fact did not exist; (5) the concealed information was

such that the injured party would have acted differently had he been aware of it; and (6) that

reliance by the person from whom the fact was concealed led to his injury. *Schrager v. North

Community Bank,* 767 N.E.2d 376, 384 (Ill. App. Ct. 2002).

      **B.**     **Lau's Fraudulent Misrepresentations and Omissions.**

      As the former President and current manager of Cement-Lock Group (Am. Compl.,

¶¶ 28, 70, 199), Lau had (and continues to have) a fiduciary responsibility to Cement-Lock

Group and its members (*Id.* ¶ 247) and thus had a duty to convey truthful information.  In

breaching his fiduciary duties, Lau misrepresented the scope of ECH's licenses to Surjit

Randhava, thereby wrongfully thwarting Unitel Technologies' independent efforts to develop the

Technology.  (*Id.* ¶¶ 224, 229.)  In addition, after becoming President of Cement-Lock Group,

Lau actively concealed and failed to reveal to Plaintiffs his knowledge of the true scope of the

fraud by the Enterprise in order to hide the existence of the Enterprise and its fraudulent actions

from Plaintiffs. (*Id.* ¶¶ 213, 215.)

      Plaintiffs reasonably relied on Lau's misrepresentations and omissions in participating in

the affairs of Cement-Lock Group, which allowed Defendants to continue their fraudulent

behavior to the detriment of Cement-Lock Group.  (*Id.* ¶¶ 295–98, 309–12, 323–26.)

Defendants' only argument to the contrary is that because Plaintiffs were informed in January

2003 that some members of the Enterprise misappropriated some money, Plaintiffs should have

immediately known of the entire scope of the fraud, despite being lied to by members of the

Enterprise and not having access to the internal records of IGT, GTI, GRI, ESI, and ECH. Defendants would have this Court hold as a matter of law that Lau could do anything and say anything without repercussion, despite owing a fiduciary duty to Cement-Lock Group and Plaintiffs, because of the minimal disclosures made to Plaintiffs in early 2003. This is not the law. Defendants controlled Cement-Lock Group's operating board during 2003 and controlled all information relating to Cement-Lock Group, contrary to the suggestion in their brief that Plaintiffs had "easy access" to this information. (Defs.' Memo., p. 20.) They also had a strong incentive to limit any disclosures of their own involvement in the fraud to Plaintiffs.

### C.  Reasonable Reliance Cannot Be Decided on a Motion to Dismiss.

Defendants correctly note that reliance is a required element of the misrepresentation and omission claims, but the cases they cite do not support the proposition that this Court can decide the reasonableness of Plaintiffs' reliance as a matter of law on a *motion to dismiss*. *See In Re EDC, Inc.*, 930 F.2d 1275 (7th Cir. 1991) (affirming judgment at *bench trial* for defendant); *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035 (7th Cir. 1990) (affirming *jury verdict* for plaintiff); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 839 F.2d 366, 370–72 (7th Cir. 1988) (affirming grant of *summary judgment* for defendant); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, *19 (N.D. Ill. May 11, 2000) (Pallmeyer, J.) (denying motion for *summary judgment* as reliance was a question of fact).

Plaintiffs allege that they reasonably relied on Defendants' (including Lau's) misrepresentations and omissions to their detriment and injury (Am. Compl., ¶¶ 295, 309, 323), and, on a motion to dismiss, these allegations must be accepted as true. *Early*, 959 F.2d at 78–79 (reversing district court's dismissal for improperly accepting defendant's interpretation of the complaint, rather than construing complaint in light most favorable to plaintiff). Any challenge

20

to whether Plaintiffs reasonably relied on Lau's misrepresentations and omissions to their detriment is a question of fact amenable to resolution only on a motion for summary judgment, at best. *Schrager*, 767 N.E.2d at 386 ("This court has explicitly held that justifiable reliance is a question of fact that is to be determined by the finder of fact and not by the trial court as a matter of law." (internal quotation omitted)).

*Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 335–36 (7th Cir. 1999), differs only because of its unique facts involving plaintiff's pleading. There, the district court granted a motion to dismiss on grounds that plaintiff failed to allege reasonable reliance. Plaintiff purchased bonds in part on the assurance that one of defendant's companies (Standard & Poor's) would give them a high rating. Plaintiff purchased the bonds prior to the rating and prior to any statements by S & P. While S & P initially gave the bonds a high rating, it later downgraded them. Despite this downgrade, plaintiff held onto the bonds for almost a year. Moreover, when buying the bonds, plaintiff received a letter and memorandum informing him that the S & P rating was not a recommendation to buy, sell, or hold and may change at any time. In addition, during the period he held the bonds, he was informed that the bonds were failing, and yet took no action. Plaintiff included all of these allegations in his complaint. The Seventh Circuit found that such pleaded facts, as a matter of law, defeated a finding of reasonable reliance. *Id.*

The situation with Lau differs markedly from that present in *Quinn*. The Enterprise and the fraud here is far more complex and lasted far longer. Moreover, Defendants actively took steps to hide their actions and isolate Plaintiffs from the true workings of Cement-Lock Group and the lack of development of the Technology. (Am. Compl., ¶¶ 99, 106, 113, 121, 123, 164, 167.) Once Plaintiffs became aware of some fraudulent activity, they requested and Defendants refused to provide all of the information necessary for Plaintiffs to assess the true scope of the

fraud. (*Id.* ¶ 231.) Only through the discovery conducted to date have Plaintiffs finally been able to begin to unravel Defendants' web of internal dealings, lies, and cover-ups. Plaintiffs fully anticipate that they will prove the allegations of their Amended Complaint, namely that they did not begin to learn of the scope of the fraud until Fall of 2003 (and until discovery is complete, the full extent of the fraud) and that Lau played an instrumental part in perpetuating and concealing the fraud from Plaintiffs. Defendants' argument that Plaintiffs' reliance was not reasonable is premature, and their Motion to Dismiss should be denied.

## CONCLUSION

Plaintiffs have pleaded a distinct, structured Enterprise with multiple purposes beyond simply engaging in the predicate acts alleged. Moreover, the allegations against Lau show his active and unlawful conduct in furtherance of the Enterprise and Plaintiffs' reliance on his actions and inactions to their detriment. For these reasons, and those stated above, Plaintiffs respectfully request that the Court deny in its entirety Defendants' Partial Motion to Dismiss Counts II & III as to all Defendants and Counts II–VI as to Defendant Lau.

Respectfully Submitted,


Dated: January 30, 2006                By:  /s/*Robert L. Wagner*
                                              CEMENT-LOCK LLC and RICHARD MELL

Jerald P. Esrick (No. 755397)
Elizabeth M. Keiley  (No. 6204675)
Robert L. Wagner (No. 6276109)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
Telephone:  (312) 201-2000
Facsimile:  (312) 201-2555

## Certificate of Service

I hereby certify that on January 30, 2006 a copy of the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** was filed electronically.  Notice of this filing pursuant to Fed.R.Civ.P. 5(a) will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Alexander S. Vesselinovitch
Daniel J. Polatsek
KATTEN MUCHIN ROSENMAN LLP
alexander.vesselinovitch@kattenlaw.com
daniel.polatsek@kattenlaw.com

Joel D. Bertocchi
MAYER BROWN ROWE & MAW LLP
jbertocchi@mayerbrownrowe.com


/s/*Robert L. Wagner*