**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Cement-Lock LLC,** an Illinois limited liability company, and **Richard Mell,** an individual, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05 C 0018 |
| **Gas Technology Institute,** an Illinois corporation, **Institute of Gas Technology,** an Illinois corporation, **Endesco Services, Inc.,** an Illinois corporation, **Endesco Clean Harbors, LLC,** a Delaware limited liability company, **Stanley S. Borys,** an individual, **James E. Dunne,** an individual, **Francis S. Lau,** an individual, and **Cement-Lock Group, LLC,** a Delaware limited liability company and nominal defendant, | ) ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca Pallmeyer

Magistrate Judge Denlow |
| Defendants. | ) ) | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
COUNTS II AND III OF THE AMENDED COMPLAINT**

Plaintiffs, Cement-Lock LLC and Richard Mell (collectively, "Plaintiffs"), by and through their counsel, submit this Supplemental Memorandum of Law in opposition to the Supplemental Motion to Dismiss Counts II and III of the Amended Complaint of Defendants Gas Technology Institute, Institute of Gas Technology, Endesco Services, Inc., Endesco Clean Harbors, LLC, Stanley S. Borys, James E. Dunne, Francis S. Lau, and nominal defendant Cement-Lock Group, LLC (collectively, "Defendants").

**I.    The *Anza* Decision Reaffirms the Proximate Cause Analysis Articulated in *Holmes*.**

On June 5, 2006, the United States Supreme Court issued its ruling in *Anza v. Ideal Steel Supply Corp.,* ___ U.S. ___, 126 S. Ct. 1991 (2006). *Anza* reaffirmed the proximate cause

analysis for civil RICO claims articulated in *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992), and concluded that the plaintiff failed to state a RICO claim. *Anza*, 126 S. Ct. at 1994–95.

In *Anza*, the plaintiff, Ideal Steel Supply Corporation ("Ideal"), sued one of its competitors, National Steel Supply, Inc. ("National"), under RICO. Ideal alleged that National failed to charge New York state sales tax on sales to cash-paying customers and committed numerous acts of mail and wire fraud by filing false state tax returns that did not accurately reflect the omitted sales tax. Ideal alleged that National's failure to charge sales tax resulted in Ideal's lost sales because National could charge less for its products, thereby undercutting the market price and gaining market share at Ideal's expense. *Id.*

Applying the *Holmes* analysis, the Court found that Ideal had not stated a claim under RICO because the harm to Ideal, if any, was far too attenuated to be compensable under RICO. It concluded that the direct victim of National's alleged fraud was the State of New York. *Id.* at 1997. Ideal's damages—its lost sales—could have been due to any number of reasons other than National's fraud on the State of New York. *Id.* Because the alleged RICO violation did not directly cause Ideal's alleged harm, the Court concluded the harm was too speculative to support a RICO claim. *Id.* at 1997–98.

In its prior decision denying in substantial part Defendants' motion to dismiss, this Court discussed *Holmes* in detail and applied the *Holmes* analysis to Plaintiffs' claims, finding that Plaintiffs adequately alleged that they were directly and proximately harmed by Defendants' wrongful actions. (Memorandum Opinion and Order, Docket #50 ("Opinion"), pp. 22–29.) Specifically, this Court recognized the variety of ways that Defendants breached their duties and engaged in wrongful conduct that directly harmed Plaintiffs. (Opinion, p. 24.) Among other

things, Defendants agreed to solicit grants and other funding on behalf of Cement-Lock Group for the purpose of developing the Cement-Lock Technology and yet misappropriated that funding to their own benefit. (Opinion, pp. 23, 27–28; Amended Compl., ¶¶ 105, 110, 157–62, 168, 170–71, 180–82, 185–87, 189, 197–98, 203, 234–35.) Furthermore, Defendants harmed Cement-Lock Group and its members by (1) devaluing Cement-Lock Group's intellectual property by wasting years off the lifespan of the two patents on the Technology and infringing its service and trademarks (*id.* ¶¶ 239–42); (2) harming Cement-Lock Group's business reputation (*id.* ¶ 201); and (3) preventing business opportunities for Cement-Lock Group in Taiwan (*id.* ¶¶ 219–29). Based on the allegations in the Complaint (which mirror the allegations in the Amended Complaint), this Court determined that the harms that Plaintiffs suffered were "neither speculative nor remote" and that Plaintiffs had adequately alleged proximate cause. (Opinion, p. 24.)

Nothing in *Anza* changes the correctness of this Court's ruling. Its reasoning remains fully in accord with *Holmes* and *Anza*. Because Defendants' supplemental motion to dismiss gains no support from *Anza*, it should be denied.

## II. *Anza* Is Patently Distinguishable From the Matter Before This Court.

In addition to providing no legal support for Defendants' motion, the factual differences between the plaintiffs in *Anza* and Plaintiffs here are striking. The plaintiff and defendant in *Anza* were competitors with no fiduciary relationship between them. Here, Defendants are members and a manager of Cement-Lock Group and, in this capacity, owed Plaintiffs and Cement-Lock Group a fiduciary duty. (Amended Compl., ¶¶ 18–28, 245–51.) Given the lack of relationship between the *Anza* plaintiff (Ideal) and defendant (National), the money that National did not declare on its state tax forms was never meant for Ideal, was never meant to benefit Ideal,

and was never collected on behalf of Ideal. It was money owed to the State of New York, not to Ideal. In contrast, given their fiduciary obligations, the money Defendants received was meant to develop and benefit Cement-Lock Group's technology and was collected of behalf of Cement-Lock Group.

In addition, National's actions did not devalue Ideal's intellectual property. National did not prevent Ideal from using or developing Ideal's technology or cause confusion in the marketplace by improperly using Ideal's service and trademarks. Defendants' actions in this matter did precisely that; Defendants' wrongful conduct devalued Cement-Lock Group's patents and created confusion in the marketplace as to Cement-Lock Group's service and trademarks. Finally, National's actions did not harm Ideal's business reputation, whereas Defendants' misappropriations caused the loss of at least one grant from the State of Michigan.

In sum, the harm Ideal suffered by National's actions in *Anza* was attenuated and indirect, at best. The primary harm was caused to the State of New York in lost revenues. Here, the primary harm was to Cement-Lock Group, which saw its intellectual property and funding hijacked by Defendants and used only for their own benefit.

## III.   The Damages Asserted by Plaintiffs Are Not Speculative.

In a poor attempt to analogize this case to *Anza*, Defendants blatantly mischaracterize Plaintiffs' damages as stemming only from the inability of Cement-Lock Group to obtain future licensing and royalty revenues. (Defs.' Suppl. Memo., pp. 4–6.) Defendants further mischaracterize the Amended Complaint as alleging that Plaintiffs' injuries "only result" from the failure to complete the New Jersey demonstration facility or the failure to commercialize the Technology. (*Id.* at 4–5.) Defendants' characterizations directly contradict this Court's prior observations that Plaintiffs' "damages are neither speculative nor remote." (Opinion, p. 24.)

More fundamentally, Defendants ignore Plaintiffs' allegations that Defendants misappropriated $30 million in grant and contract money meant solely to develop the Technology. (Am. Compl., ¶¶ 206, 234.) These stolen funds are concrete and readily calculable damages. Moreover, Cement-Lock Group's lost future licensing, lost royalty revenues, and damages to its intellectual property and business reputation are proper measures of damages that courts routinely evaluate and award. Defendants' arguments are particularly inapt given the money they misappropriated was supposed to be used to develop the Technology that would have generated the lost revenues. Defendants cannot claim that lost revenues are speculative when their wrongful conduct deliberately and purposely prevented those revenues from occurring.

Unlike the situation in *Anza*, Plaintiffs' damages flow directly from Defendants' wrongful actions. Plaintiffs' damages are real, concrete, and readily calculable. Defendants' claims to the contrary are simply wrong.

## IV. Conclusion

Defendants, as managers and a majority member of Cement-Lock Group, went to various granting and funding agencies, obtained money on behalf of and for the benefit of Cement-Lock Group, and then diverted the money to themselves, thereby enriching themselves, preventing Cement-Lock Group from developing the Technology, and injuring Cement-Lock Group's intellectual property and business reputation in the process. The Court has previously concluded that Plaintiffs have been directly and proximately injured by Defendants' actions. Nothing in *Anza* warrants a different result.

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' Supplemental Motion to Dismiss Counts II and III on grounds of proximate causation and damages.

Respectfully submitted,

CEMENT-LOCK, LLC and RICHARD MELL

By: _____ /s/Robert L. Wagner _____
One of their attorneys

Jerald P. Esrick (No. 755397)
Elizabeth M. Keiley (No. 6204675)
Robert L. Wagner (No. 6276109)
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

*Cement-Lock LLC, et al. v.*
*Gas Technology Institute, et al.*

### CERTIFICATE OF SERVICE

I, Robert L. Wagner, an attorney, hereby certify that I caused a copy of the foregoing PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I AND III OF THE AMENDED COMPLAINT via electronic filing on this 23rd day of June, 2006.

Alexander S. Vesselinovitch, Esq.
Katten Muchin Zavis Rosenman
525 West Monroe Street, Suite 1500
Chicago, IL   60661-3893

Joel D. Bertocchi, Esq.
Mayer Brown Rowe & Maw LLP
190 South LaSalle Street
Chicago, IL   606060-3441

*/s/ Robert L. Wagner*