**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CEMENT-LOCK, LLC, an Illinois limited liability company, and RICHARD MELL, an individual, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 05 C 0018 |
| GAS TECHNOLOGY INSTITUTE, an Illinois corporation, et al. ) ) ) | Honorable Rebecca Pallmeyer |
| Defendants. ) | |

**DEFENDANT BORYS' MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FED. R. CIV. P. 50 ON COUNTS II AND III**

Now comes Defendant Stanley S. Borys ("Borys"), by and through his undersigned attorney, and pursuant to Fed. R. Civ. P. 50, respectfully moves this Court to grant judgment as a matter of law regarding Counts II and III of the Amended Complaint. Plaintiffs Cement-Lock, LLC ("CLLLC") and Richard Mell, on behalf of Cement-Lock Group, LLC ("CLG"), have not submitted sufficient evidence upon which a reasonable jury could find Defendant Borys individually liable for engaging in acts that violate RICO, 18 U.S.C. § 1962(c), under Count II, or engaging in a conspiracy to violate RICO, 18 U.S.C. § 1962(d), under Count III.

**STANDARD FOR JUDGMENT AS A MATTER OF LAW**

A district court should enter a Rule 50 judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.Proc. 50; *Murray v. Chicago Transit Authority*, 252 F.3d 880, 886-87 (7th Cir. 2001) (affirming the district court's granting of a Rule 50(a) motion at the close of plaintiff's case for plaintiff's failure to establish a legally sufficient basis for a reasonable jury to enter a verdict on her behalf) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000)). The standard for granting a Rule 50 judgment mirrors the standard for granting summary judgment. *Reeves*, 530 U.S. at 150; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating that the standard for summary judgment mirrors the standard for directed verdict under Rule 50) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Malacar v. City of Madison*, 224 F.3d 727, 731 (7th Cir. 2000) (citing *Reeves*).

**ARGUMENT**

I. **PLAINTIFFS FAILED TO PRESENT EVIDENCE OF EACH ELEMENT REQUIRED TO ESTABLISH A VIOLATION OF RICO UNDER COUNT II OF THE AMENDED COMPLAINT, 18 U.S.C. § 1962(c).**

In Count II, Plaintiffs claim that Borys conducted and participated in the conduct of an alleged enterprise through a pattern of racketeering activity, and did so with the unlawful purpose of (i) diverting or misappropriating funds granted to ECH, IGT, and GTI for the development of the Cement-Lock Technology ("Technology") and (ii) suppressing development of the Technology. (Amd. Comp., ¶¶ 114, 116).

To prove a violation of § 1962(c), Plaintiffs must establish that Borys has engaged or participated in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity

affecting interstate commerce which caused injury to plaintiffs' or their business. *Richmond v. Nationwide Cassell, L.P.*, 52 F.3d 640, 644 (7th Cir. 1995); *Roger Whitmore's Auto. Services v. Lake County*, 424 F.3d 659, 670 (7th Cir .2005) (citing to *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)).

### A. Existence of Enterprise and Common Purpose.

Plaintiffs now claim that Borys, co-defendants Dunne and Lau, along with Amir Rehmat, Tony Lee, Michael Mensinger, Anil Goyal, and Pete Barone, formed an association in fact enterprise with the purpose of seizing control of the Technology from CLG for their own benefit and misappropriating funds. Tr. 4902:10-15. Plaintiffs allege that beginning in 1997, the enterprise "recognized the promises of the Cement Lock technology as a means to tap into and receive millions of dollars of research funding for IGT and ESI." Tr. 4902:17-20. Plaintiffs further allege that Borys and Dunne "learned that GTI was underspent and recognized that the Technology provided a means for obtaining these funds, which could then be leveraged to obtain funds from other sponsors without regard to how the funds were actually spent." Tr. 4902:20-25. They allege that the enterprise's conduct involved (i) wrongfully obtaining funds intended for the development and commercialization of the Technology, and misdirecting that funding; (ii) obtaining funding in connection with the Technology on behalf of GTI while knowing that GTI had no rights in the Technology; and (iii) preparing false documents and paperwork to conceal the misappropriation of funding. (Second Amd. Mem. Opinion (11/30/07), at p. 37).

The group of individuals alleged to be an enterprise must have a "common purpose of engaging in a course of conduct." *Cement-Lock v. Gas Technology Institute*, slip op. at *17, 2007 WL 4246888 (N.D. Ill. November 29, 2007) (quoting *United States v. Turkette*, 425 U.S. 576, 583 (1981)). Such an "association-in fact" enterprise must itself be engaged in criminal activity. Persons and entities associated for legitimate business purposes alone cannot constitute an "criminal enterprise" under the RICO statute. *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) (affirming dismissal of RICO claim where plaintiffs failed to establish that defendants were engaged in a "criminal enterprise" as opposed to a legitimate "normal enterprise"); *see also Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676-77, n. 3 (7th Cir. 2000) (affirming dismissal of RICO claim because RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprises affairs, not just their own affairs' through a pattern of racketeering activity") (citing *Reves v. Ernst & Young,* 507 U.S.

170 (1993)). Plaintiffs have failed to prove that such a criminal enterprise ever existed or that Borys ever associated with Lee, Rehmat, Mensinger or Barone for any criminal purposes, let alone the alleged purposes charged in the Amended Complaint, Plaintiffs' instructions, and/or this Court's Amended Summary Judgment decision.[1]

Plaintiffs simply failed to establish any evidence to demonstrate that the "defendants conducted or participated in the conduct of the 'enterprise's affairs, not just their own affairs,' through a pattern of racketeering activity." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646-47 (7th Cir.1995) (citing *Reves*). As this Court has held, "[i]n order for an association to be considered a RICO enterprise, the individuals must have conducted the affairs of the enterprise itself rather than merely acting to benefit themselves." (Second Amd. Mem. Opinion (11/30/07), at p. 30 (citing *Cedric Kuschner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)). Moreover, the record lacks any evidence of a "command structure" of the alleged enterprise or an association functioning as a continuing unit or ongoing structured organization. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000). Contrary to Plaintiffs' contention, there is no evidence that defendant Borys associated with defendants Dunne and Lau, nor Mensinger, Goyal, Rehmat, Lee and/or Barone to "seize control" of the Cement-Lock Technology.[2]

As Plaintiffs well knew, expected and requested (BX 19; 8/2/96-letter of S. Randhava requesting IGT's assistance and expert technical services and support in the ongoing research and development effort), from 1998 to 2002, steps were taken by ESI, ECH and IGT to lease property and obtain necessary environmental permits to build the plant in New York and New Jersey. BX 62 (Minutes of 4/17/00 Meeting); Tr. 2517:20 – 2518:11; 2527:4-12 (Mensinger). The patents did not issue until September 8, 1998 (USPatent No. 5, 803, 894), BX 32/PX 898 (process claims) and January 5, 1999 (USPatent No. 5, 855, 666), BX33/PX899. Plaintiffs assert that "Borys is the signatory to proposals seeking funding on behalf of ESI and IGT" (Tr. 4900:3-8) but fail to identify any such proposal in evidence or other evidence to support their assertion

---

[1] The corporate defendants are addressing in more detail the existence of any "enterprise" for the purposes of RICO liability. (See GTI parties' Rule 50(A) motion, section II(C)). Defendant Borys adopts co-defendants' arguments to the extent that they are pertinent to him.
[2] Plaintiff's assertion that Defendants "seized control" of the technology is not cognizable as a matter of fact nor as a matter of law as a derivate claim. The acts and events predating the formation of CLG on December 1, 1997 are not properly before this court in a derivate action brought on CLG's behalf.

that Borys knew about "this funding, the expenditures and these unauthorized uses" that he failed to disclose. Tr. 4900:3-8. In fact, however, the uncontradicted evidence is that Borys signed few if any proposals for ECH or IGT, that he was not one of the persons with responsibility for "expenditures" and banking transactions for either CLG (See BX 45/BX133M), ESI or ECH (Borys 96/133N). Likewise, there is no evidence that Borys knew about "unauthorized uses" of cement lock funding prior to the discovery of the BLR fraud in late 2002 and the court has found that the uncontradicted evidence is that Borys did not have knowledge of nor participate in this fraud. (Second Amd. Memorandum Opin., 11/30/07, at p. 32). Indeed, Mike Mensinger testified that he worked daily with Mssrs. Rehmat and Lee on the cement lock project and in close physical proximity and had no knowledge of their fraudulent activities until well after it was discovered and investigated in late 2002 and 2003. Tr. 2524:11-22 (Mensinger). Barone, the other member of the BLR fraud, did not work at IGT and in fact did not work at GTI until later in 2001 and was fired in January 2003. PX 872, Attachment A. Plaintiffs have offered no evidence of any other fraud of which Borys knew or in which he participated.

### B. Participation or Conduct in the Alleged Enterprise.

Plaintiffs were required to prove that Borys conducted or participated in the conduct of a RICO enterprise, by offering evidence that Borys used his position or association with the enterprise in some way in operation or management of the enterprise. *Brouwer v. Roffensperger, Hughes*, 199 F.3d 961, 967 (7th Cir. 2000), cert. denied, 530 U.S. 1243 (2000). In the instant case, the evidence has not established that Borys used his position in any way in the operation of or management of an enterprise. Even assuming, *arguendo*, that it had, which Borys disputes, "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998). Instead, Plaintiffs were required to show that Borys was involved in directing the affairs of the enterprise. *United States v. Cummings*, 395 F.3d 392, 397 (7th Cir. 2005) (citing *Reves v. Ernest & Young*, 507 U.S. 170, 178 (1993)).

The record lacks any evidence to demonstrate that Borys acted in any manner that resulted in the "operation" or "management" by him of the purported enterprise. The record is simply devoid of any substantive evidence to demonstrate how or when, or with whom, Borys purportedly used his positions at the various companies to facilitate, operate, or manage any activities of the alleged enterprise or to hide its existence. (Amended Complaint, ¶ 118.)

4

Plaintiffs failed to demonstrate any evidence as to how or when Borys purportedly engaged in any of the following acts: directed any individuals in the enterprise to prepare fraudulent research and development funds proposals and fraudulent final reports to send to the funding agencies (¶ 120); overbilled for fees in order to collect money from these funding agencies (¶ 128); diverted research and development funds into IGT's and GTI's account to inflate other defendants' compensations (¶ 134); entered into expensive contracts with subcontractors who were members of the alleged enterprise, for the purpose of diverting funds to these subcontractors (¶¶ 135-137); directed others to write research and development funding proposals to obtain money to develop the Technology, knowing that money wouldn't be used for purposes described in proposal (¶¶ 141-143); laundered money by transferring it to different accounts and different members of the enterprise (¶¶ 147-149); diverted money for their own personal use (¶ 152); concealed the existence and/or substance of the license agreements (¶ 154); engaged in actions, along with others, to divert and misappropriate any funds (¶¶ 180-182); knew about funding and expenditures that went to "unauthorized uses" (Tr. 4899: 25; Tr. 4900); used the money for his own purpose (Tr. 4902:14); obtained funds from sponsors without regard to how the funds would actually be spent (Tr. 4902:23-25). Moreover, there is simply no evidence to support the assertion that Borys "strong-armed" and "threatened Serge" -- this assertion is not contained anywhere in the Amended Complaint and occurred, if at all, before December 1, 1997.[3] Therefore, Plaintiffs have shown no evidence that Borys knowingly conducted or participated in the conduct of any RICO enterprise.

### C. Predicate Acts Constituting Racketeering Activity.

Plaintiffs assert that the predicate acts under RICO involved violations of the mail fraud statute, 18 U.S.C. § 1341, wire fraud statute, 18 U.S.C. § 1343, and money laundering statute, 18 U.S.C. § 1956. In order to establish liability under § 1962(c), Plaintiffs must prove each element of the specific predicate act underlying the purported RICO violation. However, the existence of two predicate acts may not alone be sufficient to establish that a pattern exists. *See Seventh Circuit Pattern Criminal Jury Instructions; see also GTI's and Plaintiffs' Revised RICO Instructions,* 18 U.S.C. § 1962(c).

---

[3] Evidence of actions or conduct occurring prior to December 1, 1997 is not cognizable in the RICO claims, as Plaintiffs are proceeding derivatively on behalf of CLG, which entity had not yet been formed prior to December 1, 1997. BX 24.

Plaintiffs have not shown a mail or wire fraud scheme nor any money laundering violation and have not established Borys' involvement or participation. Plaintiffs claim that Borys was involved in a racketeering scheme whereby he and other defendants had knowledge that the research and development funding would not be used to further the development and commercialization of the Technology "for the benefit of CLG"; that instead the funds would be diverted to the alleged enterprise for the members' benefit; and that these funds were sent to ECH, IGT, or GTI through the U.S. mail or by wire transfer. Furthermore, Plaintiffs claim that Borys and the other defendants, in furtherance of the alleged scheme, sent misrepresenting or fraudulent statements or information in correspondence to Plaintiffs through the U.S. mails and through e-mails. Finally, Plaintiffs allege that the defendants laundered the "proceeds" of these funds by conducting financial transactions which concealed from Plaintiffs the origin or source of these funds, by issuing checks to various subcontractors, independent contractors, and consultants, including themselves, and by transferring funds to other accounts held by IGT, GTI, and Endesco Services. (See generally, Amended Complaint, ¶¶ 135-137, 147-149, 153-160, 181-189, 196-207, 214).

Plaintiffs claim that the Defendants defrauded Cement-Lock LLC and Mell by not disclosing the receipt of "grant" funding in excess of $30 million. (Amended Complaint, ¶ 153). Plaintiffs further claim that the defendants improperly diverted these funds by spending the money toward (i) compensation payments to favored subcontractors and consultants whose work did not facilitate the project, (ii) payrolls for employees of IGT and ESI, and (iii) payments of expenses, salaries, and overhead on other unrelated projects. (Amended Complaint, ¶¶ 157-162; 177-182; 185-186). Plaintiffs claim that the Defendants "concealed" the receipt of these funds and the alleged diversions of the funds from Cement-Lock LLC, the Randhavas, and Mell. (Amended Complaint, ¶¶ 181, 185, 187, 189). In the instant case, Plaintiffs offered no evidence of Borys involvement with or knowledge of the activities involving the receipt and expenditure of research and development funds. There is no evidence that Borys participated in any way in paying subcontractors or consultants, no evidence of Borys' involvement with payroll of anyone including employees at IGT or ESI, no evidence of Borys' involvement in the payment of expenses, salaries or overhead. The sole evidence of misappropriation of funds to subcontractors and consultants is that of the BLR fraud which this Court found Borys was not a participant in

6

and did not have knowledge of. Plaintiffs have offered no other evidence of fraud in the cement lock project beyond that of the BLR fraud.

And while Borys disputes that ESI by virtue of its membership in CLG had a duty to inform Plaintiffs of all amounts of funding received by IGT, ESI, or ECH of which Plaintiffs were not members, directors, officers, employees or shareholders, the undisputed evidence is that Plaintiffs knew about all funding sponsors and amounts of funding, and knew that Mensinger was one of the principal project sponsors of ECH's oversight of vendors and contractors; and Unitel even received funds when GTI paid for Unitel's employees to assist with the Bayonne plant start up. Tr. 484:1-22 (R.Randhava); Tr. 2617:5-15 (Mensinger); GTIX 483A (Unitel Contract). Moreover, Plaintiffs acknowledge that they were in regular contact with their partners, Mssrs. Rehmat and Lee, both of whom were board members of CLG and, as to Mr. Rehmat, was technical director on virtually every funding proposal prepared on behalf of IGT (PXs 7B, 7C, 7D1, 7D2, 7F1, 93, 178, 283, 260B (not admitted against Borys), or ESI (PX 61A)(not admitted against Borys), or ECH (PX 302B, 451C, 451D, 451E). Both Ravi and Serge Randhava acknowledged knowing about the GRI funding. Tr. 2961:21-25 (S. Randhava); Tr. 607:6-14 (R. Randhava). Mr. Mensinger testified that he kept all members of the Plaintiffs informed about the cement lock project funding reported in PX 885. Tr. 2593:24 – 2594:5 (Mensinger). Further, the funding for cement lock and the New York and New Jersey Harbor demonstration plant were the subject of many CLG meetings, which all Plaintiffs attended throughout 1998 to 2003. BXs 52, 53, 85.

### 1. Alleged violation of the mail fraud statute.

Plaintiffs claim that at Borys' direction, in part, certain individuals involved in the alleged enterprise prepared and submitted numerous research and development funding proposals on behalf of ECH, IGT, and GTI to funding sources for the specific purpose of obtaining money to develop the Technology, and that these proposals were sent through the U.S. mail. In order to prove a violation under the mail fraud statute, 18 U.S.C. § 1341, Plaintiffs must show that Borys: (1) knowingly devised or participated in a scheme or artifice to defraud or to obtain money or property by false or fraudulent pretenses, misrepresentations or promises, (2) that he did so with the intent to defraud, and (3) that he used the mails in furtherance of the scheme. *United States v. Henningsen*, 387 F.3d 585, 589 (7th Cir. 2004).

7

(a) <u>Knowing participation in a scheme to defraud</u>. Plaintiffs failed to prove that Borys knowingly and willfully participated in a scheme intended to deceive or cheat another and to obtain money or property or cause the deprivation or loss of money or property to another by false or fraudulent pretenses, misrepresentations or promises. A necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact (*United States v. Tadros,* 310 F.3d 999, 1006 (7th Cir. 2002)) and failed to show how Borys engaged in any of the acts. In addition, the evidence must show that the false representations were material. *Id*.; *United States v. Gee*, 226 F.3d 885, 892 (7th Cir. 2000)(reversing defendants' mail and wire fraud convictions because the government failed to prove any false or misleading statements by defendants). A false statement is material if it has "a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Henningsen*, 387 F.3d at 589 (quoting *United States v. Fernandez,* 282 F.3d 500, 508 (7th Cir. 2002)).

In their attempts to depict a scheme to defraud, Plaintiffs claim that Borys, along with other defendants: 1) failed to disclose to Plaintiffs that ECH and IGT had received "grant" funds in excess of $30 million, 2) misrepresented the financial status of CLG and ECH to Plaintiffs by indicating that these entities were short of funds and required additional funds, 3) concealed from Plaintiffs the existence or substance of the license agreements between CLG and other companies including ECH, 4) misrepresented the "true facts" to Plaintiffs when asked about the progress in developing the Technology or receiving funds and the amounts thereof. (Am. Comp., ¶¶ 153-155).

No evidence, however, has been demonstrated with respect to Plaintiffs' claim that Borys acted improperly by failing to disclose any information about the research and development funding. First, Plaintiffs have failed to establish that there was a duty to disclose the funding. Second, even if Plaintiffs could have established a factual or legal basis for such a duty, Plaintiffs have failed to demonstrate how if at all the failure to disclose this information in any way hurt CLG, the entity on whose behalf they are proceeding. Third, the evidence demonstrates that the Plaintiffs were well aware of the funding sources and approximate amounts, that this information was the subject of meetings of CLG board members and that the Plaintiffs had full access to Mike Mensinger, the project manager, who testified that he at all times kept the Plaintiffs informed Tr. 2606:25 – 2607:17 (Mensinger). Plaintiffs also had full access to Amir Rehmat,

8

their partner and member of CLG board, who oversaw the project for IGT until his termination in early 2002, had full access to Tony Lee, their partner and IGT's employee involved with cement lock and a member of the CLG board, and continued contact with Tony Lee after Amir Rehmat was fired from IGT, and while Rehmat worked from Unitel's offices; Tr. 349:1-6 (R. Randhava); through Unitel's involvement at the NY NJ Harbor plant site by virtue of their own contract for two engineers. (Tr. 3188:8 – 3190:7 (Lau)).

As to the alleged misrepresentation of the financial status of CLG and ECH, there is no evidence that Borys misrepresented the status of either entity. First, there is no evidence that there were false representations concerning CLG's financial status, let alone any such false statements by Borys. It was understood that Mensinger and Lee would charge for activities associated with presentations and other marketing activities related to the technology. GTIX 289; Tr. 1607:21 – 1608:20 (Mell); Tr. 2588:12-25 (Mensinger). They did and were paid. The testimony revealed that CLG made cash calls in 1999, 2001 and 2003, and that CLLLC refused to contribute. (Tr. 405:2-7 (R. Randhava); 1317:24 – 1318:25 (Borys); 4021:18 – 4022:5 (S. Randhava)). Therefore, the licenses to ECH for cash and loans from ECH to CLG evidenced by promissory notes were necessary. Plaintiffs at all times knew of these transactions (although are now trying to say they did not) and at no time objected. Indeed, at the time of CLG's formation, Plaintiffs each executed a Consent to Action of the CLG Operating Board in which it was specifically stated that the Company—CLG—was to enter into "certain assignment agreements with the owners and inventors of the cement-lock technology and license such technology to other entities in the ordinary course of its operations. . . " BX 45/133B.

With respect to the financial status of ECH, Plaintiffs have failed to identify any involvement of Borys as to the financial activities of ECH, have failed to identify any alleged misrepresentation concerning ECH's financial status and how if at all they were in privity of contract to ECH re: representations of its financial status. Further, Plaintiffs have not identified any misrepresentation concerning ECH's financial status that were made to them and made to them by Borys.

Furthermore, there is also no evidence whatsoever that Borys concealed or attempted to conceal the existence or substance of the license agreements between CLG and ECH, or that Borys made any false or misleading statements concerning the progress of the development of the Technology or research and development funds received. Nor have Plaintiffs identified any

9

misrepresentation by Borys concerning the NY / NJ Harbor facility or its condition and progress of the Technology. Finally, there is no evidence that CLG was injured in any way by the alleged fraud or any alleged statements made by Borys. Based on the foregoing, Plaintiffs failed to introduce sufficient evidence to demonstrate that Borys, individually, engaged or participated in any act which would constitute a scheme to defraud Plaintiffs.

(b) <u>Intent to defraud</u>. "Intent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1005 (7th Cir. 2004) (quoting *United States v. Britton,* 289 F.3d 976, 981 (7th Cir. 2002)). To satisfy the intent element, Plaintiffs must show that Borys acted with "willful participation in [the] scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved." *United States v. Bailey*, 859 F.2d 1265, 1273-74 (7th Cir. 1988). The evidence must demonstrate "a specific intent to defraud and not merely knowledge of shadowy dealings." *Id*. at 1274 (quoting *United States v. Piepgrass,* 425 F.2d 194, 199 (9th Cir. 1970)). While a "combination of suspicion and deliberately avoiding further knowledge may support an inference of actual knowledge" to satisfy the intent element, "it takes a fairly large amount of knowledge" to permit a jury to infer the requisite knowledge under 18 U.S.C. § 1341.

During their case, Plaintiffs presented no evidence that Borys had a specific intent to defraud Plaintiffs.

(c) <u>Use of mails in furtherance of a scheme to defraud</u>. Plaintiffs must demonstrate sufficient evidence that the U.S. mails were used in furtherance of the allege scheme to defraud. The burden to prove the mailing is not satisfied merely with evidence that the mails were "in fact used as a result of the fraudulent scheme." *United States v. Maze*, 414 U.S. 395, 404(1974). There must also be evidence that the defendant used the mails in furtherance of the scheme and that such mailing was reasonably foreseeable. *U.S. v. Bailey*, 859 F.2d 1265, 1273-74 (7th Cir. 1988); *United States v. Mascio*, 774 F.2d 219, 221 (7th Cir. 1985). Here, there have been only conclusory statements suggesting that the mails have been used, which are insufficient to establish mail fraud. *United States v. Spirk*, 503 F.3d 619, 623 (7th Cir. 2007) (reversing mail fraud conviction because court found the witness' testimony that he "probably" received a letter in the mail insufficient to establish mail fraud); *see also United States v. Swinson*, 993 F.2d 1299, 1302 (7th Cir. 1993) (finding that the government failed to establish evidence that the usual

business practice was followed concerning the alleged mail fraud incident); *United States v. Brooks*, 748 F.2d 1199, 1203-04 (7th Cir. 1984) (reversing conviction for lack of evidence confirming that the subject letters had been sent by U.S. mail, versus other form of delivery or messenger service). In the instant case, no evidence of mailings has been demonstrated, let alone any evidence that the use of the mails furthered any scheme.

    **2.    Alleged violation of the wire fraud statute.**

In order to establish that Borys engaged in wire fraud, Plaintiffs must show evidence of each of the following elements: (1) existence of a scheme to defraud; (2) interstate wires were used in furtherance of the scheme; and (3) the defendants participated in the scheme with the intent to defraud. *United States v. Stephens*, __ F.3d. __, 2008 WL 248769 at *1 (7th Cir. 2008) (citing *United States v. Owens*, 301 F.3d 521, 528 (7th Cir. 2002)); *United States v. Lindeman*, 85 F.3d 1232, 1240 (7th Cir. 1996). Claims based on acts of alleged wire fraud "must do more than outline a scheme or make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how the communication furthered the scheme to defraud." *IRN Payment Systems v. Direct Furniture, LLC*, 07 C 0141, 2007 WL 2713366 at *6 (N.D. Ill. Sept. 12, 2007) (quoting *R.E. Davis Chemical Corp. v. Nalco Chemical Co.*, 757 F.Supp. 1499, 1516 (N.D. Ill. 1990)). In the absence of a defendant's actual and personal use of the interstate wires, Plaintiffs must prove that it was reasonably foreseeable that the interstate wires would be used in furtherance of the scheme to defraud. *Lindeman*, 85 F.3d at 1241. In this case, no such evidence has been offered as to Borys.

In general, intra-state communications, do not give rise to a violation of § 1343. *Gallimor, Inc. v. Abdula*, 652 F.Supp. 437, 449 (N.D. Ill. 1987) (finding that plaintiff's allegations in civil RICO complaint established that all phone calls described took place entirely within State of Illinois were insufficient to establish predicate wire fraud) (citing *Harris Trust & Savings Bank v. Ellis*, 609 F.Supp.1118, 1122, n. 8). *See also*, *Amer. Automotive, Accessories, Inc. v. Fishman*, 991 F.Supp. 987, (N.D. Ill. 1998) (granting summary judgment to defendant on plaintiffs' RICO claims since plaintiffs failed to present any evidence that defendant made any interstate phone calls or utilized the postal service in the alleged scheme).

Plaintiffs have failed to introduce evidence that it was reasonably foreseeable that interstate wires would be used in furtherance of the alleged scheme and in fact such wires were used in furtherance of a scheme and that Borys knew it and intended to defraud CLG by it.

### 3. Money Laundering Violation.

Plaintiffs claim that Borys engaged in acts amounting to money laundering because the funding obtained from research and development sponsors for the development of the Technology amounted to "proceeds" under 18 U.S.C. § 1956 which the defendants allegedly attempted to divert and conceal through financial transactions. This assertion is contrary to the evidence adduced at trial. With one exception none of the R & D funds can be labeled as "grants"— rather, they were cost reimbursement or fixed price contracts. Tr. 2297:8 – 2300:12 (Mensinger) . Fixed price contracts simply fixed the amount of money that could be used and allocated for overhead and other charges.

In order to establish a violation under the money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i), Plaintiffs must establish through evidence that (1) the property involved in a financial transaction represented the proceeds of some form of unlawful activity (specifically one of the charged predicate acts), that (2) Borys knowingly conducted or attempted to conduct a financial transaction which involved the proceeds of such unlawful activity, and that (3) he did so with the knowledge that the transaction was designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds. Plaintiffs have failed to prove that Borys is liable for the predicate act of money laundering under § 1956 because they have offered no evidence to demonstrate that any such monies constituted "proceeds" resulting from an unlawful activity (e.g. "illegal proceeds") or that Borys individually participated in any financial transaction, let alone a financial transaction with knowledge that the purpose of the transaction was to conceal illegal proceeds.

1. <u>Financial transaction involving "proceeds"</u>. Plaintiffs were required to present evidence showing that Borys participated in a financial transaction with the knowledge that the transaction involved proceeds resulting from the commission of acts in violation of the mail fraud or wire fraud statutes. "Proceeds" under § 1956 refers to net income, not gross receipts, from the underlying unlawful activity. *See United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002) (vacating conviction for money laundering because the only monies transferred out of illegal gambling machines were for payments to customers and owner compensation).

Furthermore, net income, not gross receipts, is considered proceeds; expenses to maintain criminal operation are not considered "proceeds" under the money laundering statute. *Id*. at 477-78; *see also*, *United States v. Malone*, 484 F.3d 916 (7th Cir. 2007) (vacating conviction for conspiracy to commit money laundering because charged activity did not involve "proceeds" where funds were used to pay operation expenses of criminal endeavor). The evidence established that the R & D funds provided for the Cement Lock project were for reimbursement and fixed price contracts payable only after proof of a deliverable or performance of specific tasks (through submission of deliverables, invoices etc). There was no evidence of any "net income" as that term is used to describe "proceeds."

    2. <u>Knowing participation in "financial transaction"</u>. Plaintiffs must show that Borys conducted a "financial transaction" within the meaning of the money laundering statute. 18 U.S.C. § 1956. The evidence at trial did not disclose a single bank or other financial transaction in which Borys participated. Even if he had however, the law provides that not all activities occurring at a bank are automatically deemed a "transaction" merely because they involve a bank. *See United States v. Bell*, 936 F.2d 337 (7th Cir. 1991)(vacating money laundering conviction because the mere deposit by defendant of drug sale proceeds in a safety deposit box at bank was not a "transaction" under 18 U.S.C. § 1956 since it did not involve any "transfer" involving a bank's retention of control over its customer's funds). Moreover, Plaintiffs have failed to adduce any evidence at trial as to what specifically the complained of transactions consisted of.

    3. <u>Knowledge that transaction was designed to conceal proceeds.</u> Plaintiffs must show that Borys had knowledge that the subject transaction was designed or intended for the purpose of concealing or disguising the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. There is no evidence that Borys was involved in any of the financial transactions for any of the entities at issue: GRI, IGT, ESI, ECH, or CLG. Nor is there evidence that Borys engaged in any financial transaction for any of these entities. Thus, Plaintiffs cannot establish that Borys had knowledge of a particular transaction and that its purpose was to conceal or disguise the nature, location, the source, the ownership or the control of proceeds.

  **D.** **Pattern of Racketeering Activity.**

In order to establish a "pattern of racketeering activity" under § 1962(c), Plaintiffs must prove that Borys committed or caused another person to commit at least two acts of racketeering activity, which occurred within ten years of one another, such that the acts were related to each other and not merely isolated events. *Bunker Ramo Corp. v. United Busineess Corms*, 713 F.2d 1272, 1285 (7th Cir. 1983). Two predicate acts do not establish a pattern; rather, "it must also be shown that the predicates themselves amount to, or constitute a threat of, continuing racketeering activity." See *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Thus, "[a] pattern is not formed by sporadic activity", and "RICO liability will not attach simply because a person has committed two widely separated and isolated criminal offenses." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir .2004) (citing *H.J. Inc.*, 492 U.S. at 239). Instead, Plaintiffs must show evidence of a relationship between the predicates and that there is a threat of continuing criminal activity. *Id*. As the Seventh Circuit has noted: "[M]ail and wire fraud allegations are unique among predicate acts because the multiplicity of such acts may be no indication of the requisite continuity of the underlying fraudulent activity. Consequently, we do not look favorably on many instances of mail and wire fraud to form a pattern." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 475 (7th Cir. 2007) (quoting *Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1024-25 (7th Cir. 1992)).

Plaintiffs failed to meet this evidentiary standard. First, Plaintiffs have failed to establish that Borys has participated in a fraud scheme. Second, Plaintiffs have failed to establish that Borys participated in any mail or wire transactions let alone ones that form a pattern and that were in furtherance of a fraud scheme.

**E.     RICO Injury.**

Finally, Plaintiffs have failed to demonstrate sufficient evidence that they suffered any injury as a result of any alleged RICO violation by Defendant Borys. Pursuant to 18 U.S.C. § 1964(c), the plaintiff must be a "person injured in his business or property by reason of a violation of section 1962 [RICO]." Plaintiffs cannot establish their standing to sue under RICO unless they present sufficient evidence that they incurred an injury to their "business or property" within the meaning of § 1964(c). See *Evans v. City of Chicago*, 434 F.3d 916, 924-25 (7th Cir. 2006). Furthermore, whether an alleged RICO injury was caused "by reason of" a violation of the RICO statute has also been considered a component of standing. *Evans*, 434 F.3d at 924 (citing *Beck v. Prupis,* 529 U.S. 494 (2000)); See also *Anza v. Ideal Steel Supply Corp.*, 547 U.S.

451 (2006). Defendant adopts the arguments made by the GTI defendants in their Rule 50 Motion with respect to the failure of proof as any RICO injury to Plaintiffs. Plaintiffs have not established sufficient evidence that any alleged injury resulted to CLG in its business or property because of a RICO violation committed by Borys. Therefore, judgment as a matter of law in favor of Borys is warranted.

## II. PLAINTIFFS FAILED TO PRESENT EVIDENCE OF THE ACTS ALLEGED IN COUNT III -- THAT BORYS AGREED AND CONSPIRED TO ENGAGE IN ANY ACTS IN VIOLATION UNDER RICO, 18 U.S.C. § 1962(d).

In Count III, Plaintiffs alleged that Borys, among other Defendants, agreed or acted in a conspiracy to violate the RICO statute through the predicate acts of mail fraud, wire fraud, or money laundering. Plaintiffs claim that Borys agreed to the commission of those acts to further the Defendants' alleged scheme to defraud.

Proof of a conspiracy to participate or conduct the affairs of an enterprise through a pattern of racketeering activity under 18 U.S.C. § 1962(d), requires that the plaintiff demonstrate essentially two agreements: (i) an agreement to conduct or participate in the affairs of an enterprise and (ii) an agreement to the commission of at least two predicate acts. *Goren*, 156 F.3d at 731. "If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy." *Id*. In order to prove a conspiracy to violate § 1962(d), the "agreement must be to knowingly facilitate the activities of the operators or managers to whom [§ 1962(c)] applies . . . . It is an agreement, not to operate or manage the enterprise, but personally to facilitate the activities of those who do." *Brouwer*, 199 F.3d at 967. *See Cummings* 395 F.3d at 398 (reversing conviction for conspiracy to violate RICO because the trial record lacked evidence that defendants conspired knowingly to facilitate the activities of a manager or operator of the charged RICO enterprise).

Consequently the statements and actions of the alleged members of the RICO conspiracy cannot be used against Borys. With respect to Lee, Rehmat and Barone, whom Plaintiffs contend are party of the association-in-fact, it is well-settled in this circuit that when an agent acts "entirely on his own behalf . . . he is acting outside the scope of the agency and the principal is not bound." *William Electronics Games, Inc. v. Garrity*, 366 F.3d 568, 575 (7th Cir. 2004) (citing *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1210 (7th Cir. 1993) (emphasis in original). Also, with respect to any other individual who is allegedly involved in the

15

conspiracy, as Plaintiffs have not established a conspiracy, the statements of any alleged co-conspirators under Fed. R. Evid. 802(d)(2)(E) cannot be admissible against Borys. Consequently, plaintiff's RICO claims must stand or fall based on Borys' own statements and actions. Plaintiffs have not demonstrated evidence to support any elements of such a offense particularly as to Borys.

## CONCLUSION

For the foregoing reasons, Defendant Stanley Borys requests this Court enter Judgment as Matter of Law on Counts II and III, in favor of Defendant Borys and against Plaintiffs and grant whatever further relief the Court deems just.

RESPECTFULLY SUBMITTED,

STANLEY BORYS

BY: /s/ Susan Bogart
    Law Offices of Susan Bogart
    30 North LaSalle St., Ste. 2900
    Chicago, IL 60602
    (312) 263-0900 ext. 7014
    SBogart514@aol.com